(17)

NOT FOR PUBLICATION



FILED

SEP. 28 2015

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re                                          Case No. 09-16160-A-13

Juan Enrique Hurtado,

        Debtor.
_____/

Patti Jones,                                   Adv. No. 11-1102

        Plaintiff,            BPM-28

    vs.

Juan Enrique Hurtado,

        Defendant.
_____/


**MEMORANDUM**

Defendant Juan Hurtado ("Hurtado") requests a new trial in this adversary proceeding that resulted in a judgment in favor of plaintiff Patti Jones ("Jones") excepting from discharge a $363,089.32 debt that he owed her.

## FACTS

Jones wanted to build a luxury home in Rancho Santa Fe, a planned community in San Diego County.  She purchased a lot and had plans drawn by a licensed architect.  Jones engaged one contractor and then parted ways with it.  Then she needed another contractor.

Urban Design Concepts, Inc. ("URDECO") builds homes. Jones approached URDECO, which was owned and operated by Hurtado and Eric Blossman, about constructing her home.  As a part of URDECO's overtures to Jones, Hurtado convinced Jones that her plans were "completely messed up."  Hurtado represented (falsely) that he was an architect and that, if Jones hired URDECO to build her home, he would correct the previous architect's errors in Jones's house plans. Convinced, Jones entered into a construction contract with URDECO.

Hurtado then made design changes to Jones's home.  But he did so poorly, requiring Jones to expend substantial sums of money to correct Hurtado's errors. URDECO also worked on the home but failed to account properly for monies received and failed to pay subcontractors, as well as materialmen, resulting in liens against the home.  Displeased with URDECO, Hurtado, and Blossman, Jones filed a lawsuit against them in state court for recovery based on construction defects and other losses.

After the suit was filed, Hurtado and Jones negotiated a settlement agreement that was evidenced by two emails.  Its terms provided that Hurtado personally would repay some of URDECO's debt to Jones, resolve outstanding liens against Jones's home, and indemnify Jones against claims by subcontractors.  Though contemplated by the

parties, the settlement agreement was not further memorialized by the parties' attorneys, and Hurtado did not perform the settlement obligations to which he had agreed.

Unable to resolve this and other financial problems, Hurtado filed a chapter 13 bankruptcy. Jones did not receive timely notice of Hurtado's bankruptcy. But after learning of it, Jones filed an adversary proceeding under 11 U.S.C. § 523(a)(2), (3), and (4) to preclude Hurtado from discharging his debt to her. After a 7-day trial, this court ruled that Hurtado had assumed $363,089.32 of URDECO's debt to Jones and the court excepted that amount from discharge under 11 U.S.C § 523(a)(3). *Jones v. Hurtado (In re Hurtado)*, No. 11-1102, 2015 WL 2399665 (Bankr. E.D. Cal. May 18, 2015). The issue of the existence of a debt created by Hurtado's assumption of a debt in the settlement was deemed tried by consent. Fed. R. Civ. P. 15(b)(2), *incorporated by* Fed. R. Bankr. P. 7015. The court determined that $312,155.14 of the total debt of $363,089.32 was additionally a debt for nondischargeable fraud under § 523(a)(2). But Hurtado prevailed on Jones's § 523(a)(4) claim. The court rendered judgment in favor of Jones, and Hurtado filed a notice of appeal.

Hurtado has filed a motion entitled "Motion and Renewed Motion for Judgment as a Matter of Law or in the Alternative for a New Trial."[1] The motion questioned jurisdiction, denial of Hurtado's

---

[1] As drafted, the court construes the motion as requesting: (1) judgment as a matter of law, Fed. R. Civ. P. 50(a); (2) judgment on partial findings, Fed. R. Civ. P. 52(c); and (3) a new trial, Fed. R. Civ. P. 59(a)(1)(B). Rule 50 is only applicable for trial by jury. Fed. R. Civ. P. 50(a)-(b), *incorporated by* Fed. R. Civ. P. 9015(c); *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1030-31 (9th Cir. 1996). Because this matter was not tried by a jury, Rule 50(a) is inapplicable. By contrast, Rule 52(c) is applicable in nonjury trials in bankruptcy court. *See* Fed. R. Bankr. P. 7052. Hurtado had brought a timely Rule 52(c) motion during

3

motion for "judgment as a matter of law," and whether substantive and procedural errors warrant a new trial.  Finding no error, the court will deny the motion.

## JURISDICTION

This court has jurisdiction.  *See* 28 U.S.C. §§ 1334, 157(a); 11 U.S.C. § 523; General Order No. 182 of the U.S. District Court for the Eastern District of California.  That jurisdiction extends to "all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).

In cases and civil proceedings over which the bankruptcy court has jurisdiction under title 28, the court's adjudicatory authority is further determined by ascertaining whether the matter is core or non-core.  *Stern v. Marshall*, 564 U.S. --, --, 131 S. Ct. 2594, 2606-07 (2011).  The distinction between core and non-core matters is not a question of subject matter jurisdiction.  *Stern*, 131 S. Ct. at 2607 ("[Section 157's] allocation [of authority to enter final judgment between bankruptcy and district courts] does not implicate questions of subject matter jurisdiction."). Rather, it is a question of the constitutional authority of a bankruptcy judge to enter final orders and judgments and of the division of labor between the district court and the bankruptcy court.  *Id.* at 2608-09, 2619-20.

In short, bankruptcy courts may enter final orders and judgments over matters that are both statutorily and constitutionally core.  28

---

trial, which the court took under submission.  But rather than ruling on Hurtado's motion, the court issued a ruling on the merits at the end of trial.  Doing so was consistent with precedent allowing the court to defer ruling on such a motion until the close of the evidence, *Int'l Union of Operating Eng'rs, Local Union 103 v. Ind. Constr. Corp.*, 13 F.3d 253, 257 (7th Cir. 1994), or authorizing the court to decline to rule on the motion at all.  *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 451 n.29 (7th Cir. 2006).  By process of elimination, the court construes this as a motion for new trial. *See* Fed. R. Civ. P. 59(a).

4

U.S.C. § 157(b)(1); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015). Absent consent of the parties, bankruptcy courts may not finally determine matters that are non-core. 28 U.S.C. § 157(c).

A determination of whether a debt is excepted from discharge is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(i); *Carpenters Pension Trust Fund for N. Cal. v. Moxley*, 734 F.3d 864, 868 (9th Cir. 2013) (11 U.S.C. § 523(a)(4)); *Deitz v. Ford (In re Deitz)*, 469 B.R. 11, 16 (9th Cir. BAP 2012), *aff'd*, 760 F.3d 1038 (9th Cir. 2014) (11 U.S.C. § 523(a)(2)). Since this is an adversary proceeding asserting that Hurtado's debt to Jones is excepted under 11 U.S.C. § 523(a)(2), (3) or (4), this is a core proceeding for which this Court was empowered to enter judgment.[2]

Even if the claims in this adversary proceeding were non-core, the parties consented to their resolution by this Court. With express or implied consent of the parties, a bankruptcy court may issue final orders and judgments in non-core matters. 11 U.S.C. § 157(c)(1), (2); *Wellness Int'l,* 135 S. Ct. at 1932. Here, the parties so consented. Status Conf. Hr'g, Sept. 25, 2014.[3]

---

[2] Hurtado's suggestion that his case is similar to *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), is not tenable. *Marathon* involved a debtor-in-possession's action to augment the bankruptcy estate by recovering damages from a third party for a pre-petition breach of contract claim. Unlike *Marathon*, this adversary proceeding was brought by a third party creditor, Jones, who submitted herself to the jurisdiction of the Bankruptcy Court for the purpose of adjudicating the dischargeable nature of Hurtado's debt to her.

[3] Hurtado's suggests that 28 U.S.C. § 157(b)(5) applies to this action, a statutory provision that reserves to the district court the resolution of personal injury torts and wrongful death actions. This assertion falls short. Assuming that Jones's fraud claim falls within the definition of a personal injury tort, *see Stern v. Marshall*, 131 S. Ct. at 2607 n.4, the protections of § 157(b)(5) may be waived, *id.* at 2606-08. And the parties did so here. Status

**DISCUSSION**

I. **Legal Standards**

Upon motion, bankruptcy courts may grant parties a new trial. Fed. R. Civ. P. 59(a)(1)(B), *incorporated by* Fed. R. Bankr. P. 9023. Grounds for granting a new trial in actions tried to the court are: (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence. *Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978); *Mabrey v. Wizard Fisheries, Inc.*, 2008 WL 110500 (W.D. Wash. Jan. 8, 2008).

A creditor's ability to except a debt from discharge in chapter 13 is governed by §§ 523(a) and 1328(a) of the Bankruptcy Code. Determining whether a debt is excepted from discharge requires a two-step analytical approach. Initially, state law determines the existence and amount of the debt. *Grogan v. Garner*, 498 U.S. 279, 283 (1991); *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998) (applying state law to determine the amount of nondischargeable debt). Next, federal law applies to determine whether the debt is dischargeable. *Grogan*, 498 U.S. at 284; *Brown v. Felsen*, 442 U.S. 127, 129-30 (1979).

As applicable here, two species of debt may be excepted from discharge: unscheduled debts and debts incurred by fraud. Unscheduled debts are not subject to the discharge, unless the creditor had notice or actual knowledge of the bankruptcy prior to the deadline for filing a proof of claim, or in the case of a debt of the type described in 11 U.S.C. § 523(a)(2), (4), or (6), prior to the deadline to file an adversary proceeding for a determination of the dischargeability of that debt. 11 U.S.C. § 523(a)(3).

_____

Conf. Hr'g, Sept. 25, 2014. Thus, § 157(b)(5) is inapplicable to this court's ability to enter final judgment.

1    Alternatively, debts arising from fraud are excepted from

2  discharge.  The elements of § 523(a)(2)(A) fraud are well-known: "(1)

3  the debtor made a representation; (2) the debtor knew the

4  representation was false at the time he or she made it; (3) the

5  debtor made the representation with the intent to deceive; (4) the

6  creditor justifiably relied on the representation; and (5) the

7  creditor sustained damage as a proximate result of the

8  misrepresentation having been made."   *In re Mbunda*, 484 B.R. 344,

9  350 (B.A.P. 9th Cir. 2012), *aff'd*, No. 13-60002, 2015 WL 1619469 (9th

10  Cir. Apr. 13, 2015).  It is well-settled that misrepresentations

11  regarding professional licenses may form the basis of fraud under 11

12  U.S.C. § 523(a)(2), when the misrepresentation goes to the essence of

13  the agreement.  *Gem Ravioli, Inc. v. Creta (In re Creta)*, 271 B.R.

14  214 (B.A.P. 1st Cir. 2002); *Torres v. Martinez (In re Martinez)*, No.

15  RS 07-12037 DN, Adv. No. RS 07-01140 DN, 2008 WL 954164 (C.D. Cal.

16  2008); *Willcox v. Carpenter (In re Carpenter)*, 453 B.R. 1, 5-6

17  (Bankr. D.D.C. 2011); *Bottari v. Baiata (In re Baiata)*, 12 B.R. 813

18  (Bankr. E.D.N.Y. 1981).

19

20  **II.   Unscheduled Debts**

21     **A.   Blossmann's Rejection of the Settlement**

22    Hurtado maintains that URDECO, not he personally, owed a debt to

23  Jones on the date of the petition.  The only possible basis for

24  imposing URDECO's liability to Jones on Hurtado is the settlement

25  agreement with Jones.  Hurtado argues that there was no settlement

26  agreement because resolution of the dispute as to all parties was

27

28

contemplated and Eric Blossman refused to participate in Hurtado's
settlement with Jones.[4]

Absent a contrary intent, that the parties contemplated a
further reduction of the agreement to writing (or to a more refined
writing) does not preclude enforcement of an agreement without the
further writing. *See Hurtado*, 2013 WL 2399665, at *14.  The same
principle applies to agreements that contemplate an approval or
signature of others that is ultimately not obtained.  *Winter v.
Kitto*, 100 Cal. App. 302 (1929); 1 Witkin, *Summary of California Law*,
Contracts § 135 (10th ed. 2012).  Without evidence that such other
parties' signatures were a condition precedent to the completed
agreement, the parties who did sign the agreement will be bound even
without the other parties' signatures. *See id.*; *see also Angell v.
Rowlands*, 85 Cal. App. 3d 536, 542 (1978).  The California Supreme
Court said, "If by parol stipulation, or, *a fortiori*, if by the
writing itself, the contract was not to be deemed complete until
other signatures should be added, it without such addition will not
bind those who have signed it; but if nothing of this appears, the
parties signing will be holden, though even on the face of it the
signatures of the others were contemplated by the draughtsman."
*Cavanaugh v. Casselman*, 88 Cal. 543, 550 (1891) (quoting treatise).

---

[4]  Hurtado waived any objection he had to the introduction of the
settlement discussion, or the emails memorializing it, under the
terms of the "Agreement Re Inadmissibility of Settlement
Communications" or under Federal Rule of Evidence 408.  Fed. R. Evid.
103(a)(1); *Gilbrook v. City of Westminster*, 177 F.3d 839, 859 (9th
Cir. 1999) (failure to object on the basis of Rule 408 is waiver).
And this court so found.  *Hurtado*, 2015 WL 2399665, at *11-12.

Here, the agreement affords no such interpretation.[5] Most aptly construed, it is an agreement only between Jones and Hurtado. With the exception of a term stating that "John and all other parties to the lawsuit to accept a stipulated judgment that becomes effective in the event John fails" to perform,[6] all other terms refer either to Hurtado or Jones. Moreover, the context of the agreement, i.e., an effort to convince Jones to allow Hurtado alone to finish the job, suggests that Hurtado was acting primarily, if not exclusively, on his own behalf. But even if the agreement were interpreted as being between Jones, Hurtado, Blossman, and URDECO, the emails contain no express condition making the agreement effective as to Hurtado if and only if all others approve it. Parol evidence suggests that Hurtado did not condition the agreement upon the approval of others. For example, in conjunction with Jones's desire to recoup deposits from Kiesler cabinets, Hurtado told Jones, "I want to be a man, and I will stand up and pay what I owe you." Hr'g Tr. at 56:1-2, Jan. 22, 2015. Finding that the agreement existed only between Jones and Hurtado and that they did not condition the agreement upon the approval of others, the court concludes that Blossman's refusal to join the agreement does not preclude its enforcement against Hurtado.

---

[5] Jones's email to Hurtado, and his responsive email, is set forth in a memorandum of decision filed in this case after trial. *See Hurtado*, 2015 WL 2399665, at *6-7.

[6] This term does not require the signatures of "all other parties" as a condition of the completed agreement. Instead, the court reads it as a term of the settlement imposing an obligation on Hurtado to obtain a stipulated judgment that includes the other parties to the lawsuit. This term is intended to provide Jones a means of enforcement in the event Hurtado failed to perform the settlement.

9

### B.   False Testimony

Hurtado argues that the judgment was the product of fraud,[7] occasioned by Jones's submission of only two emails, i.e., an email from Jones to Hurtado, August 22, 2007, at 11:29 p.m., and an email from Hurtado to Jones, August 23, 2007, at 7:06 a.m.   See Trial Exs. 6-35, 6-36 (pertaining to settlement).   Had the court been provided a complete picture of the settlement discussions from the numerous pages of other emails relating to the settlement, Hurtado suggests, no finding that he had assumed URDECO's debt to Jones could have been made, negating the basis for the unscheduled-debt finding.

The court disagrees.   The court found that Jones assumed URDECO's debt to Jones based on a conversation between Jones and Hurtado on August 16, 2007, at Delicia's restaurant, which was memorialized by the two admitted emails between Jones and Hurtado.   The court has reviewed the complete email record submitted with the present motion, and it will not alter its finding on the question of Hurtado's assumption of URDECO's debt to Jones.   *See* Ex. 6 Supp. Mot. for New Trial, June 1, 2015, ECF No. 319 (comprising 145 pages).   Emails prior to August 16, 2007, do not make the factual elements necessary

---

[7] Hurtado also argues that Jones perjured herself. Mem. P. & A at 5:22-23, June 1, 2015, ECF No. 318. Hurtado does not precisely identify the perjury. But the court presumes his argument stems from her testimony that she did not sign or did not recall signing an agreement that settlement discussions would be inadmissible under Federal Rule of Evidence 408. There are, however, two problems with such an argument. First, Hurtado has not ruled out the possibility that Jones simply did not recall doing so. Given the passage of almost eight years between the settlement discussion and the trial, the court finds this to be the more likely scenario. Second, any objection to this line of questions was waived. Fed. R. Evid. 103(a)(1).

to find an assumption of debt more or less likely to be true.  Fed. R. Evid. 401, 402.  And emails after August 23, 2007, do not shed any light on the issue.  The court finds that the failure to offer the additional emails did not render the two emails offered misleading, much less fraudulent.  Even if Jones should have submitted the additional emails, they do not alter the evidentiary finding of Hurtado's assumption of the debt, and Jones's failure to offer such emails was immaterial and harmless.  If the additional emails Hurtado presents, moreover, do not change the factual conclusion reached on the debt-assumption issue, then Jones's submission of only two emails did not make her testimony false.

### C.    Surety Issues

Hurtado argues that the cabinetry contract was between Jones and Kiesler and, presumably, that it could not have been a debt Hurtado assumed.[8]  The facts shown at trial do not support such a position. First, the construction contract between Jones and Hurtado specifically contemplated a contractual agreement between URDECO and its subcontractors and materialmen.  See Ex. 4 Supp. Mot. for New Trial, June 1, 2015, ECF No. 319 (Residential Construction Contract-Fixed Fee ¶ 3(a)).  Second, this court found that the Kiesler debt to Jones (even if it was owed directly to her by Kiesler) was assumed by Hurtado, and that finding forms an independent basis for recovery from Hurtado as to this portion of the debt.

---

[8] Hurtado also argues Jones has forfeited her rights because she failed to protect collateral for the debt involved. Mem. P. & A. at 8:15-26, June 1, 2015, ECF No. 318.  But Hurtado does not identify the collateral and, insofar as the court is aware, the Kiesler debt was unsecured.  As a result, the court cannot grant the motion on this basis.

### D.    Judicial Estoppel

Hurtado contends that the doctrine of judicial estoppel precludes Jones from asserting claims arising from representations of architectural licensure and promises to assume debt to Jones.[9] Hurtado argues that these claims had never been asserted before trial, so the doctrine bars Jones from asserting them now.

Hurtado is mistaken.  First, that representations of architectural licensure formed the basis of the fraud claims was well-known by the parties and part of the pleadings.  Third Am. Compl. ¶ 6, June 16, 2014, ECF No. 203 ("false representation and actual fraud . . . representing that he was an architect licensed by the State of California . . ."); Answer to Pl.'s Third Am. Compl. at 3:13, Sept. 15, 2014, ECF No. 243 ("Defendant DENIES that he represented himself as a licensed architect"); Pretrial Order § 4.1, Sept. 30, 2014, ECF No. 248.  Jones did not impermissibly change her position on this point.

---

[9] Though couched as a denial of due process, Hurtado's argument focuses on judicial estoppel. Mem. P. & A. II(C), June 1, 2015, ECF No. 318.  As a result, the court focuses its analysis on this doctrine.  However, the court will address the due process argument here.  Hurtado argues that the court erred by treating the un-pleaded debt-assumption theory to have been tried by Hurtado's consent. Hurtado claims that his procedural due process rights were violated by the court's deeming the issue to have been raised in the pleadings under Federal Rule of Civil Procedure 15(b).  The court rejects this argument.  The court is unwilling to find that Rule 15(b)'s procedures for deeming an un-pleaded issue as if raised in the pleadings violate due process.  "[T]he procedures prescribed by subdivision (b) and employed by the courts for determining the propriety of permitting an amendment at trial do satisfy the requirements of due process."  6A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, & Adam N. Steinman, *Federal Practice & Procedure* § 1491 (3d. ed. 2010).  Those procedures, moreover, were followed when the court found that Hurtado consented to trial of the issue.

Second, Jones was not judicially estopped from asserting
Hurtado's debt assumption.  Judicial estoppel precludes a party from
benefiting by taking one position and then asserting a clearly
contrary position. *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 270
F.3d 778, 782 (9th Cir. 2001) (citing *New Hampshire v. Maine,* 532
U.S. 742, 750-51 (2001)).  Several considerations apply in deciding
to apply the doctrine.  First, the later position must be "clearly
inconsistent" with the former.  *Id.*  Second, the party to be estopped
must have persuaded the court to accept its earlier position.  *Id.*
Third, the party who changes position must gain an unfair advantage
or the opposing party must suffer an unfair detriment as a result of
the change.  *Id.*

Judicial estoppel does not apply to the issue of Hurtado's
assumption of debt.  Federal Rule of Civil Procedure 15(b) allows the
parties during trial to modify the pleadings or pretrial order.  Fed.
R. Civ. P. 15(b)(2), *incorporated by* Fed. R. Bankr. P. 7015; *Hurtado*,
2015 WL 2399665, at *9-13.  By consent at trial, the parties expanded
the scope of the pleadings to include the debt-assumption issue.
Jones's position on this issue at trial cannot be inconsistent with
Jones's prior position because she had taken no prior position: this
issue was raised for the first time at trial.  Given the parties'
consent to trial of the issue, Jones gained no unfair advantage, and
Hurtado suffered no unfair detriment.

**III. Fraud**

**A.    Motion to Dismiss**

Hurtado argues that a new trial should be granted because the
court improperly denied his Rule 12(b)(6) motion.  This argument is
indefensible.  Hurtado cites no authority that a Rule 59(a)(1)(B)
motion may be used as a means to revisit a denial of a Rule 12(b)(6)
motion.  Procedures are available to attack the denial of a Rule

12(b)(6) motion: (1) an extraordinary writ, (2) an appeal by
certification and permission, (3) considering the issue preserved for
appeal and proceeding with an answer, or (4) allowing a default
judgment to be entered by refusing to answer and then appealing the
judgment based on the legal defense to the claim.  Tashima &
Wagstaffe, *California Practice Guide: Federal Civil Procedure Before
Trial* §§ 9:295-299.2 (Rutter Group 2015).  But motions for a new
trial are commonly used to address only errors at trial.  *See* Jones,
Rosen, Wegner & Jones, *California Practice Guide: Federal Civil
Trials & Evidence* §§ 20:100-240 (Rutter Group 2015).  More
importantly, the court believes that its denial was proper.  *See* Hr'g
Civ. Mins., June 21, 2012, ECF No. 90.

**B.    Representation of Architectural Licensure**

Hurtado argues that the finding that he represented himself as a
licensed architect was a manifest error of fact.  At trial, Jones
contended Hurtado made such a representation; Hurtado denied it.
Whether Hurtado represented himself as an architect thus depended on
credibility.  The court found Jones's testimony more credible.
Hurtado's sole new evidence is the statement, "At no time did I tell
Jones nor have I ever held myself out as an architect." Hurtado Decl.
¶ 7, filed June 1, 2015, ECF No. 320.  This evidence does not
convince the court that its findings were manifestly erroneous.

**C.    Nature of URDECO's Contract with Jones**

Hurtado argues that since URDECO's agreement was for
construction, not architectural, services, any misrepresentation
regarding *architectural* licensure may not form the basis of an action
under 11 U.S.C. § 523(a)(2)(A).

This court disagrees.  The second element of an action for fraud
is that the representation was made with the purpose and intent of
deceiving the plaintiff. *In re Mbunda*, 484 B.R. 344, 350 (B.A.P. 9th

1   Cir. 2012), *aff'd*, No. 13-60002, 2015 WL 1619469 (9th Cir. Apr. 13,

2   2015). "The representation of architectural licensure was part of

3   Hurtado's broader effort to convince Jones to hire URDECO. Hurtado

4   told Jones that her plans drawn by her previous architect were

5   defective, that he was an architect, and that, if she hired URDECO,

6   he would repair her plans as part of the deal." *Hurtado*, 2013 WL

7   2399665 at *22. The representation of architectural licensure induced

8   Jones to enter the contract, even if the contract was for

    construction services.

9       Moreover, the court found Jones justifiably relied on Hurtado's

10  claim of *architectural* licensure. This representation was an

11  important factor in Jones's hiring of URDECO. Because Jones's

12  standards were exacting, Jones would not have hired Hurtado had she

13  known he was not a licensed architect. This representation also went

14  to the essence of the construction contract because Jones's residence

15  was required to be designed by a licensed architect, and Hurtado

16  worked on correcting Jones's allegedly defective plans.

17      Further, a significant portion of Jones's losses could

    reasonably have been expected to flow from (proximately caused by)

18  Hurtado's false representation of architectural licensure. The

19  evidence showed that "Jones's losses were largely work that San Diego

20  County and/or Rancho Santa Fe homeowners' association required to be

21  re-done because the design changes Hurtado made did not satisfy

22  applicable code or rules." *Hurtado*, 2015 WL 2399665, at *15.

23      In short, even if the contract the parties entered was for

24  construction, not architectural, services, the outcome does not

25  change. Jones suffered losses as a proximate result of Hurtado's

26  representation of *architectural* licensure and from the damages

27  resulting from Hurtado's work that could reasonably be expected to

    flow from his misrepresentation. Such damages would not have been

28

reasonably expected had Hurtado been a licensed architect as he had claimed.

**D.    Expert Testimony on Damages**

Hurtado argues that California requires expert testimony on damages.

This court remains unconvinced that its original analysis of the amount of damages flowing from Hurtado's fraud is incorrect. "The bankruptcy court has discretion in an adversary proceeding to use the benefit-of-the-bargain damages or out-of-pocket damages. *Gen. Leasing Co. v. Anguiano (In re Anguiano)*, 99 B.R. 436 (B.A.P. 9th Cir. 1989). In most instances, courts apply the out-of-pocket measure of damages. *Id.* In this case, the court found that the out-of-pocket measure of damages adequately compensated Jones for her losses. As such, the court looked to those damages that proximately flowed from the licensure misrepresentation." *Hurtado*, 2013 WL 2399665 at *22. Using that measure, and adding interest, the court found the amount to be $312,155.14.

**CONCLUSION**

For each of these reasons, Hurtado's motion is denied. The court will issue a separate order.

Dated: September 28, 2015

Fredrick E. Clement
United States Bankruptcy Judge

**Instructions to Clerk of Court**

**Service List**

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

   Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and _____X_____ Other Persons Specified Below:

Scott R. Burton, Esq.
574 S. Rancho Santa Fe Rd.
San Marcos, CA 92078

Henry P. Friesen, Esq.
7545 Irvine Center Dr. #200
Irvine, CA 92618

Patti M. Jones
P. O. Box 9834
Rancho Santa Fe, CA 92067

Brian P. Moquin, Esq.
3506 La Castellet Ct.
San Jose, CA 95148